1

2

3

4

5

6

7

8

9                    IN THE UNITED STATES DISTRICT COURT

10                        FOR THE DISTRICT OF OREGON

11  In the Matter of the
    Arbitration between
12

13  LOUIS BARINAGA,                    )
                                       )
14               Claimant,             )
                                       )    No.  CV-05-1432-HU
15        and                          )
                                       )
16  MARVIN COX and UBS                 )
    PAINEWEBBER, INC.,                 )    FINDINGS & RECOMMENDATION
17                                     )
                 Respondents.          )
18  _____)

19  Kim Buckley
    ESLER STEPHENS & BUCKLEY
20  700 Pioneer Tower
    888 S.W. Fifth Avenue
21  Portland, Oregon 97204-2021

22       Attorney for Claimant

23  Marvin Cox
    13389 S.W. Ascension Drive
24  Tigard, Oregon 97223

25       Respondent, Pro Se

26  HUBEL, Magistrate Judge:

27       In this action, Marvin Cox seeks to vacate an arbitration

28  award made against him by the National Association of Securities

1 - FINDINGS & RECOMMENDATION

Dealers (NASD) in favor of Louis Barinaga.  Cox generally contends that the arbitration panel committed misconduct, entitling him to an order setting aside the award.

In a March 21, 2006 Order, I resolved some initial legal questions regarding the timeliness of Cox's filing the action and service on Barinaga.  I also addressed whether Cox's Chapter 13 bankruptcy had any effect on this action or this Court's jurisdiction over the action.  After resolving those issues in the March 21, 2006 Order, I then ordered the parties to brief the legal issues raised by the merits of Cox's motion to set aside the arbitration award, including his right to a jury trial, his right to an evidentiary hearing before the Court, and the appropriate standards by which to adjudge his allegations.

I heard argument on these issues on October 16, 2006, and took them under advisement.  For the reasons explained below, I conclude that Cox is not entitled to a jury trial, is not entitled to an evidentiary hearing, and under the applicable standards, fails to demonstrate that the arbitration award should be vacated.  Thus, I recommend that the motion to vacate be denied and that this action be dismissed.

                              STANDARDS

Under 9 U.S.C. § 10, a district court may make an order vacating an arbitration award under five circumstances:

> (1) Where the award was procured by corruption, fraud, or undue means.
> (2) Where there was evident partiality or corruption in the arbitrators, or either of them.
> (3) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

2 - FINDINGS & RECOMMENDATION

(4) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.
(5) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators.

9 U.S.C. § 10(a).

DISCUSSION

Cox's arguments in support of his motion to vacate appear to be brought under subsections (a)(1) through (a)(4) of 9 U.S.C. § 10. However, the central argument, and one which is actually the basis for several others, is that the arbitrators were guilty of misconduct by refusing to postpone the hearing, both before the hearing began, and during the hearing itself.

I.   Right to Jury Trial or Evidentiary Hearing

The scope of review of an arbitration award under the Federal Arbitration Act (FAA) is extremely limited and was set by Congress in section 10.   In Kyocera Corp. v. Prudential-Bache Trade Services, Inc., 341 F.3d 987 (9th Cir. 2003), the Ninth Circuit explained that the

the Federal Arbitration Act allows a federal court to correct a technical error, to strike all or a portion of an award pertaining to an issue not at all subject to arbitration, and to vacate an award that evidences affirmative misconduct in the arbitral process or the final result or that is completely irrational or exhibits a manifest disregard for the law.   These grounds afford an extremely limited review authority, a limitation that is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures.

Id. at 997-98.   The court continued:

Congress had good reason to preclude more expansive federal court review.   Arbitration is a dispute resolution process designed, at least in theory, to respond to the wishes of the parties more flexibly and

3 - FINDINGS & RECOMMENDATION

expeditiously than the federal courts' uniform rules of procedure allow.  Proponents of arbitration cite its potential for speed and informality[.]. . .  Broad judicial review of arbitration decisions could well jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process. Congress's decision to permit sophisticated parties to trade the greater certainty of correct legal decisions by federal courts for the speed and flexibility of arbitration determinations is a reasonable legislative judgment that we have no authority to reject.

Id. at 998 (footnote omitted); see also Am. Heritage Life Ins. Co. v. Orr, 294 F.3d 702, 711 (5th Cir. 2002)("The Seventh Amendment right to a trial by jury is limited by a valid arbitration provision that waives the right to resolve a dispute through litigation in a judicial forum"); Hartford Lloyd's Ins. Co. v. Teachworth, 898 F.2d 1058, 1060 (5th Cir. 1990) (noting that district court held that section 10 of FAA did not give party opportunity for jury trial on validity of arbitration award; district court's holding not challenged on appeal).

In addition to no right to a jury trial, evidentiary hearings are not required on challenges to arbitration awards under 9 U.S.C. § 10.  Legion Ins. Co. v. Insurance Gen'l Agency, 922 F.2d 541, 542 (5th Cir. 1987) (district court not required to conduct full hearing or take additional evidence on motion to vacate arbitration award); Austin South, I, Ltd. v. Barton-Malow Co., 799 F. Supp. 1135, 1144 (M.D. Fla. 1992) (evidentiary hearing not required on issue of arbitrator's bias).

As explained below, Cox's arguments in favor of setting aside the arbitration award are primarily based on the arbitration panel's denial of Cox's June 14, 2005 motion to postpone the July 2005 arbitration, and the panel's subsequent denial during the July

4 - FINDINGS & RECOMMENDATION

2005 hearing, to postpone the proceeding.  The evidence relevant to the first postponement request has been submitted to the Court and is in the record.

As to the setover request Cox made during the arbitration proceeding, Cox failed to submit a transcript of the hearing as part of the record here.  At the October 16, 2006 oral argument, he requested permission to file that transcript.  I denied his request.  Cox has had thirteen months since filing this action to procure the transcript.  It undermines the expeditious nature of arbitration proceedings to delay this action any further. Furthermore, as explained below, even assuming, for the purposes of this Findings & Recommendation only, the truth of the facts related to this postponement request as asserted by Cox in his September 14, 2005 Affidavit filed with the motion to vacate, those facts do not support setting aside the arbitration award.

In sum, Cox's arguments do not warrant taking any additional evidence.

II.  June 14, 2005 & July 29, 2005 Postponement Requests

The issue raised by Cox is whether it was an abuse of discretion for the arbitration panel to deny his June 14, 2005 request for postponement of the July 25, 2005 arbitration, when the panel had previously granted postponement requests from other parties, and in light of the fact that Cox was unrepresented and had not found new counsel.  Cox also raises the issue of whether the panel's rejection of his alleged request to postpone the hearing, made during the hearing, amounted to misconduct.

A.  Background

Barinaga filed a Statement of Claim against Cox and Cox's

5 - FINDINGS & RECOMMENDATION

employer, Paulson Investment Company, with the NASD on August 2, 2002.  Exh. 1 to Buckley Sept. 15, 2006 Declr.  Stuart MacKenzie was a co-claimant with Barinaga.  Id.  The original statement of claim asserted claims based on Cox's sale of E.Com International, Inc., securities to the claimants.  Id.  Kim Buckley, who represents Barinaga in this action, represented Barinaga in the arbitration claim.  Cox was represented, initially, by Paulson's attorneys at Stoll Stoll Berne Lokting & Shlachter.

On December 20, 2002, Buckley wrote to the NASD to request a one-month extension of time to return the "Arbitrator Ranking" form.  Exh. 2 to Motion to Vacate.  In support of his request, Buckley explained that his office might need to withdraw from representing Barinaga, MacKenzie, or both, because of a possible conflict of interest caused by the respondents' (Paulson and Cox) having asserted counterclaims for indemnity or contribution against Barinaga if they were required to pay damages to MacKenzie.  Id. Presumably, this request was granted.

On October 20, 2003, Buckley requested a postponement of the arbitration hearing which was then scheduled for November 3, 2003, through November 6, 2003.  Unnumbered Exh. to Motion to Vacate.  A later letter by Buckley, dated June 15, 2005, which Barinaga submitted to the arbitration panel in opposition to Cox's June 14, 2005 request to postpone the July 2005 hearing, explained that the first scheduled hearing of November 3, 2003, through November 6, 2003, was postponed at Barinaga's request because the Multnomah County Circuit Court case by Barinaga against E.Com International and others, including Cox's alleged business partner Simon Taylor, was set for trial that same day.  Unnumbered Exh. to Motion to

6 - FINDINGS & RECOMMENDATION

Vacate.   Cox did not oppose that request and the circuit court trial commenced on November 3, 2003.  Id.

On October 28, 2003, Barinaga filed a Second Amended Statement of Claim against Paulson, Cox, and UBS PaineWebber, Inc.  Exh. 2 to Buckley Sept. 15, 2006 Declr.  The additional claims involved E.Digital stock and concerned recommendations by Cox and Paulson that Barinaga make unsuitable investments in securities lending offered by UBS PaineWebber.  Apparently, at this point, Paulson continued to be represented by the Stoll Stoll firm, but Cox was now represented by Frank Lagesen at Cosgrave Vergeer Kester.

A prehearing scheduling conference was conducted on March 23, 2004.  Exh. 3 to  Buckley Sept. 15, 2006 Declr. at p. 2.  The arbitration was scheduled for January 24-28, 2005, and January 31 - February 4, 2005, for two full weeks.  Id. at p. 3.

It is undisputed that in late 2004, Barinaga reached a settlement of his E.Com claims with both Paulson and Cox.  Then, during the week of January 20, 2005, MacKenzie also settled his E.Com claims with Paulson and Cox.  The first week of the two-week hearing, January 24-28, 2005, was cancelled.   The hearing was now set for only the second week, January 31, 2005 through February 4, 2005.  Exh. 4 to Buckley Sept. 15, 2006 Declr.  Because of the settlements, only Barinaga's E.Digital claims remained.

On January 26, 2005, Barinaga settled his E.Digital claims against Paulson and Cox, or at least he thought he had reached a settlement, leaving only the claims against UBS PaineWebber.  See Exh. 5 to Buckley Sept. 15, 2006 Declr. (Jan. 26, 2005 letter from UBS PaineWebber's attorney informing NASD of settlement between Barinaga and Cox and Paulson).  Upon learning of the settlement,

7 - FINDINGS & RECOMMENDATION

UBS PaineWebber's attorney, Tom Sand, wrote to the NASD to request a setover of the hearing, set for the following week. Id. Sand explained that Paulson (represented by Stoll Stoll) and Cox (represented by Lagesen), and UBS PaineWebber, had entered into a joint defense agreement under which they divided various hearing responsibilities, and with Paulson and Cox, and their respective counsel, out of the case, UBS PaineWebber "was faced with the impossible task of mounting an adequate defense to Barinaga's suitability claims without the participation of Paulson and Cox." Id. at p. 1. UBS PaineWebber's request was granted. Exh. 6 to Buckley Sept. 15, 2006 Declr.

Thereafter, Cox apparently refused to sign the settlement agreement. Exh. 7 to Buckley Sept. 15, 2006 Declr. In a February 2, 2005 email from Buckley to Lagesen, Buckley stated that if he did not have an original settlement agreement with Cox's signature on it by February 4, 2005, he would report to the NASD that Paulson and Barinaga were mistaken when they advised the panel that the case between Barinaga and Cox had settled. Id. When the deadline came and went with no signed settlement by Cox, the NASD was appropriately notified that Barinaga's E.Digital claims against Cox had not been settled.

On February 8, 2005, the NASD communicated to counsel for Barinaga, Cox, and UBS PaineWebber, that the rescheduled hearing was to take place on July 25-29, 2005. Exh. 10 to Buckley Sept. 15, 2006 Declr.

On March 14, 2005, Lagesen notified the NASD that he was withdrawing as counsel for Cox. Exh. 8 to Buckley Sept. 15, 2006 Declr. At that point, the arbitration hearing was 133 days away.

8 - FINDINGS & RECOMMENDATION

On June 14, 2005, Cox sent a postponement request to NASD Hearing Administrator Audrey Philips, three months after Lagesen withdrew his representation.  Unnumbered Exh. to Motion to Vacate. The letter stated:

> I am writing to you to request that the arbitrators grant an adjournment of my arbitration hearing from the current date of July 25, 2005, for reasons that include the recent withdrawal of my legal counsel in this case, over my objections.  This is my first request for any adjournment.  The claimant Louis Barinaga has been granted two postponements so far in this proceeding.
> Counsel for the other co-respondent UBS PaineWebber has indicated that UBS does not object to the postponement of the time for hearing my arbitration with Louis Barinaga, although UBS may want to go forward with its case with the claimant as scheduled on July 25.
> The reasons why I urgently need an adjournment include the following.  My legal counsel in this arbitration, Cosgrave Vergeer Kester, withdrew from representing me, in spite of my strong objections, when I did not settle the frivolous claims of Louis Barinaga. In spite of my requests and the payment of the firm's fees, the withdrawing law firm has still not returned or delivered to me the legal files and documents that are essential for preparing and presenting my case.  I have not yet been able to arrange replacement counsel.  Based on inquiries, I understand that it may be difficult if not impossible for me to obtain any affordable representation if a new law firm faces a deadline that requires it to learn the case and prepare my defense, papers and counterclaims by July 25.  With more than $50,000,000 in spurious claims against me, I do not believe that I should be effectively denied representation.
> For the above reasons, I request an adjournment of my arbitration for 120 days from July 25, 2005.  I am willing to take part in a conference of the parties to determine the postponed hearing date.  I also request that the arbitrators waive any fee for the adjournment I am requesting, because my ability to pay any such fee is severely limited after years of frivolous litigation with claimant Barinaga.

Id.

A telephone conference was held on June 27, 2005, on

9 - FINDINGS & RECOMMENDATION

Barinaga's motion to file a Fourth Amended Statement of Claim[1] and on Cox's letter request to postpone the hearing set for July 25, 2005. Exh. 9 to Buckley Sept. 15, 2006 Declr. The panel granted Barinaga's motion, but denied Cox's postponement request. Id.

The written ruling issued by the panel noted that at the hearing, Cox stated that as a result of Lagesen's withdrawal, and his failure to receive documents from Lagesen, it was not possible for a new attorney to adequately prepare for the scheduled hearing. Id. The written ruling also noted that Barinaga objected to the postponement because bifurcation of the case would add unnecessarily to the costs incurred by Barinaga, and because Cox had not acted with appropriate expeditiousness in retaining a new attorney to represent him. Id. In denying Cox's request, the panel stated:

> Cox's Motion to Postpone is DENIED. The panel concluded that Cox had sufficient time to retain a replacement attorney after his initial attorney had withdrawn by Notice of Withdrawal of Counsel, dated March 14, 2005. Such timely appointment would have obviated the need for a postponement.

Id.

The arbitration hearing was held as scheduled from July 25, 2005, through July 29, 2005. A decision issued from the panel on or about August 12, 2005. Exh. 1 to Motion to Vacate. The panel granted UBS PaineWebber's motion for summary award, denied

---

[1] The panel's written ruling following the arbitration proceeding shows that the Fourth Amended Statement of Claim was not materially distinguishable from the Third Amended Statement of Claim and the Revised Third Amended Statement of Claim, filed February 2, 2004, and March 31, 2004, respectively. The material change seems to have been the inclusion of the fact that the E.com claims had settled. Exh. 1 to Cox's Motion to Vacate.

10 - FINDINGS & RECOMMENDATION

Barinaga's claims against UBS PaineWebber, and assessed UBS PaineWebber's attorney's fees against Barinaga. Id. at p. 6. The panel found against Cox. It determined he was solely liable and assessed an award of $205,000 in compensatory damages against him in favor of Barinaga. Id. The panel denied Barinaga's request for punitive damages against Cox. Id.

B. Discussion

Under 9 U.S.C. § 10(a)(3), as long as there is any reasonable basis for the arbitrators' decision to deny the postponement request, the district court should not disturb the award. As explained by the Eighth Circuit:

> Appellants challenge the arbitrator's denial of their motion for a continuance. The Federal Arbitration Act provides that a district court may set aside the determination of an arbitrator "[w]here the [arbitrator] was guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." 9 U.S.C. § 10(a)(3). We review the district court's determination for abuse of discretion. . . . Courts will not intervene in an arbitrator's decision not to postpone a hearing if any reasonable basis for it exists. . . . To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing.

El Dorado Sch. Dist. No. 15 v. Continental Cas. Co., 247 F.3d 843, 847-48 (8th Cir. 2001) (internal quotations and citations omitted).

The standard of review is for abuse of discretion. The court in C.T. Shipping, Ltd. v. DMI (U.S.A.), Ltd., 774 F. Supp. 146, 149 (S.D.N.Y. 1991), explained:

> Contrary to C.T's interpretation, § 10(a)(3) does not expressly provide that arbitrators who refuse an adjournment are guilty of misconduct. . . . Rather, the granting or denying of an adjournment falls within the broad discretion of the arbitrators. . . . Section 10(a)(3) limits the court's review of the arbitrator's refusal to adjourn the hearing to a determination of

11 - FINDINGS & RECOMMENDATION

whether the arbitrators were guilty of misconduct. . . .
The court will not interfere with an award on these
grounds as long as there exists a reasonable basis for
the arbitrators' refusal to grant a postponement.

Id. (internal quotation, brackets, and citations omitted).

The record supports a conclusion that the arbitrators'
decision to deny Cox's June 14, 2005 postponement request, was not
unreasonable. The prior postponements requested by Barinaga in
December 2002 and October 2003, were supported by obvious conflicts
in either Buckley's continued ability to represent his clients, or
in scheduling. UBS PaineWebber's January 2005 postponement request
was well supported by a settlement of the claims against its co-
defendants, with whom it had a joint defense agreement, immediately
before the commencement of the hearing.

Cox did not support his postponement request with any type of
a conflict or change in circumstances occurring contemporaneously
with his request or immediately preceding that request. Rather, as
the record reflects, there was a considerable delay by Cox in
making the request to postpone. Lagesen withdrew from representing
Cox three months before Cox sought to postpone the hearing. The
record in this case contains no evidence that Cox supported his
postponement request with an explanation of his efforts to obtain
new counsel after Lagesen withdrew. Even now, Cox submits no
explanation of any attempts to hire new counsel following Lagesen's
withdrawal. Nothing in the record undermines the panel's
conclusion that Cox had had sufficient time to retain a replacement
attorney after Lagesen withdrew, and that more expeditious action
by Cox would have obviated the need for a postponement.

I recommend concluding that the arbitration panel did not

12 - FINDINGS & RECOMMENDATION

abuse its discretion in denying Cox's June 14, 2005 request to postpone the July 2005 arbitration proceeding.  Because the arbitrators articulated a reasonable basis for the denial of the June 14, 2005 request, Cox's motion to vacate the award on the basis that the panel committed misconduct in denying that request, should be denied.

Cox also contends that during the arbitration proceeding, the panel wrongful rejected his request for a continuance.  He states:

> The misconduct and partiality of the arbitrators in denying postponement also occurred during the hearing itself, which I was compelled to attend without counsel or adequate preparation due to the panel's denial of [the June 14, 2005 request for] an adjournment.  While the lawyers for other parties were routinely allowed breaks in the hearing to arrange witnesses and deal with unexpected issues and other matters, the panel manifested its misconduct, prejudice and partiality by denying such essential time to me as a pro se respondent.
> After UBS was granted summary judgment, the panel denied my request for summary judgment on the same grounds (a lack of logic and disregard for law that is discussed below).  I immediately asked for a postponement from that Friday July 29 to the following Monday to contact witnesses and prepare.  This short adjournment was particularly necessary because before summary judgment it was anticipated that UBS would put on a substantial part of witnesses, evidence and summation that were necessary for my case, in exactly the type of division of hearing responsibilities that UBS had with Paulson before Paulson settled with claimant Barinaga.  Although UBS was granted a six-month extension to handle this disruption, the panel denied me even a few hours, which made it impossible for me to coordinate witnesses or adequately prepare.  The panel allowed me less than six hours remaining on that Friday to put on whatever I could, without time to prepare.

Cox Sept. 14, 2005 Affid. at ¶¶ 8, 9.

As noted above, Cox has not submitted a transcript of the arbitration proceeding to this Court in support of his motion to vacate.  Even though Cox raised this issue in his initial filing here, he has never sought to file the transcript of the arbitration

13 - FINDINGS & RECOMMENDATION

proceeding until the October 16, 2006 hearing.  The record contains only the above-recited self-serving statements of Cox in his September 14, 2005 Affidavit.

Notably lacking is any contemporaneous record, outside of the transcript, supporting his argument, such as a letter to the panel submitted during the hearing, evidence of a joint defense agreement with UBS PaineWebber, or a record in the panel's decision of Cox's having made the motion and the panel having denied the motion.  The panel's decision contains a section entitled "Other Issues Considered and Decided."  Exh. 1 to Motion to Vacate.  There, the panel recites that during the hearing, Cox withdrew his counterclaims except for attorney's fees, the panel denied UBS PaineWebber's motion to exclude testimony of lawyer expert witnesses, and the panel denied Cox's oral motion for summary award.  Id.  There is no mention of Cox having made a motion for postponement during the hearing or of the panel having denied any such motion.  Id.

In this section of the decision, the panel also recites that "[d]uring the hearing, Respondent Cox stated that he did not receive a full and fair opportunity to be heard because of insufficient time to prepare his case."  Id.  Again, this is not a recitation of Cox having made a motion for postponement or the panel having denied any such motion.

Because there is no independent, contemporaneous evidence corroborating the self-serving statements in the affidavit, the statements are not reliable and do not provide a basis for granting the motion to vacate as a result of the denial of an alleged postponement request made during the hearing.

14 - FINDINGS & RECOMMENDATION

1    Even if I were to credit Cox's affidavit statements, however,
2    I recommend concluding that Cox has failed to establish a
3    sufficient basis to show that the panel acted unreasonably or
4    abused its discretion.   In his affidavit, Cox fails to identify
5    what evidence he was allegedly unable to present or what arguments
6    he was unable to make as a result of the denial of a postponement
7    from Friday, July 29, 2005, to Monday, August 1, 2005, after UBS
8    PaineWebber was apparently out of the case.
9    Cox made his alleged request on Friday, the fifth day of a
10   five-day hearing.   It is reasonable to assume that before then,
11   both Cox and UBS PaineWebber had had time to present evidence and
12   arguments in their defense.   Moreover, it would not have been
13   unreasonable for the panel to conclude that since the claims
14   against Cox had been pending against him for at least sixteen
15   months at the time of the hearing, Cox had had sufficient time to
16   prepare a defense.   Although Cox was without counsel for the four
17   months immediately prior to the arbitration hearing, overall he
18   should have had enough time to prepare.   Thus, even accepting Cox's
19   affidavit statements as true, I recommend concluding that the
20   panel's denial of an alleged motion to postpone made during the
21   hearing, was not unreasonable and thus, the motion to vacate based
22   on the denial of that motion to postpone, should be denied.

23   III.  Postponement-Related Arguments

24   Several of Cox's arguments appear to implicate other bases for
25   setting aside an arbitration award, but upon closer examination, it
26   is apparent that these arguments are premised on the denial of the
27   postponement motions.

28   First, Cox contends that the arbitrators exhibited

15 - FINDINGS & RECOMMENDATION

"partiality" in refusing his request for postponement. An arbitration award may be set aside "[w]here there was evident partiality[.]" 9 U.S.C. § 10(a)(2). "'[E]vident partiality' within the meaning of 9 U.S.C. § 10 will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds, 748 F.2d 79, 84 (2d Cir. 1984). A mere appearance of bias is insufficient to vacate an arbitration award. Austin South I, 799 F. Supp. at 1142. To the extent Cox's "evident partiality" argument is based on the fact that the arbitrators granted postponement requests by Barinaga and UBS PaineWebber but denied requests made by Cox, I recommend that the argument be rejected for the reasons explained in the previous section.

Second, Cox contends that the arbitrators committed misconduct when they refused to hear pertinent and material evidence. Although an arbitration award may be set aside for arbitrator misconduct based on the refusal "to hear evidence pertinent and material to the controversy[,] 9 U.S.C. § 10(a)(3), Cox's argument here is that the arbitrators' denial of the postponement requests prevented him from assembling evidence and witnesses. This argument, however, addresses only a consequence of a decision by the arbitrators that was not itself unreasonable. Thus, it is not a basis upon which to set aside the award. I recommend that this argument be rejected.

Third, Cox contends that the arbitrators' denial of his postponement requests constitutes misbehavior that prejudiced him and amounts to imperfect execution of the arbitrators' powers. An

16 - FINDINGS & RECOMMENDATION

award may be set aside if the arbitrators are guilty of "any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3).   An award may also be set aside if the arbitrators "so imperfectly executed" their powers "that a mutual, final, and definite award upon the subject matter submitted was not made."  9 U.S.C. § 10(a)(4).

I view these arguments by Cox as collateral attacks on the denial of the postponement requests.  The effects of the denials may well have been that Cox was unable to present certain evidence or witnesses (although it bears mention that he fails to cite to any witnesses or evidence that he was prevented from calling or submitting during the arbitration proceeding).  But with the arbitrators having articulated a reasonable basis for their decision to deny the June 14, 2005 postponement request, and with a reasonable basis appearing in the record for the denial of the July 25, 2005 postponement request, it would be inappropriate for Cox to effectively argue, through resort to a separate subsection of 9 U.S.C. § 10, that the arbitrators erred in denying his postponement requests.

IV.  Other Arguments

A.  Refusal to Hear Evidence

As noted above, an arbitration award may be set aside when the arbitrators were guilty of misconduct in refusing to hear evidence pertinent and material to the controversy.  9 U.S.C. § 10(a)(3). Cox contends that the arbitration panel failed to send the witness subpoenas he had prepared, even though they sent subpoenas requested by other parties shortly before the arbitration hearing commenced.  Cox Sept. 2005 Affid. at ¶ 10.  He states that despite

17 - FINDINGS & RECOMMENDATION

the panel having informed him that they would send out the subpoenas he requested, they told him at the hearing that they had not sent them. Id. As a consequence, Cox states, the panel effectively refused to hear evidence that would have been provided by these witnesses, "including evidence of the continuing acuteness, healthiness, and sophisticated business and investment activities of claimant Barinaga." Id.

Setting aside an arbitration award on the basis that an arbitrator refused to hear evidence is appropriate only when exclusion of relevant evidence so affects the rights of a party that it may be said that he was deprived of a fair hearing. Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985); see also Nitram, Inc. v. Industrial Risk Insurers, 848 F. Supp. 162, 165 (M.D. Fla. 1994) (federal courts give great deference to arbitrator's decision to control order, procedure, and presentation of evidence), aff'd, 141 F.3d 1434 (11th Cir. 1998).

The FAA authorizes arbitrators to "summon in writing any person to attend before them . . . as a witness and . . . to bring with him or them any book, record, document, or paper which may be deemed material as evidence in the case." 9 U.S.C. § 7. The summons is to be served in the same manner as subpoenas to appear and testify before the court. Id. If a person so summoned refuses to obey the summons, upon petition, the United States District Court for the district in which the arbitrators are sitting may compel the attendance of the person before the arbitrator. Id.

Because of the FAA's provision that the summons is to be served in the same manner as subpoenas to appear and testify before

18 - FINDINGS & RECOMMENDATION

the court, the arbitrators' authority to issue a summons is governed by Federal Rule of Civil Procedure 45. E.g., Legion Ins. Co. v. John Hancock Mut. Life Ins. Co., No. 01-4213, 2002 WL 537652, at *2 (3d Cir. Apr. 11, 2002) (given language in FAA that arbitration subpoenas "shall be served in the same manner as subpoenas to appear and testify before the court[,]" and Rule 45 governs the issuance and service of subpoenas in federal district court, Rule 45 also governs the service of arbitration subpoenas under the FAA).

Under Rule 45, a subpoena may be served at any place within the district of the court by which it is issued, or at any place outside of the district that is within 100 miles of the place of the hearing. Fed. R. Civ. P. 45(b)(2). See id. (stating that "a subpoena duces tecum issued by a federal court cannot be served upon a nonparty for the production of documents located outside the geographic boundaries specified in Rule 45.").

Cox fails to create a record in support of his argument that the alleged failure of the arbitrators to issue subpoenas on his behalf deprived him of a fair hearing. Cox submits no copies of the subpoenas, no description of the putative witnesses' testimony, no evidence that the witnesses were within the subpoena power of the arbitrators, no evidence of when he made the request of the arbitrators, and no evidence that he tendered any fee that might have been required. Without any such evidence, I cannot conclude that the award should be set aside for failure to hear pertinent and material evidence to the extent that Cox was deprived of a fair hearing.

B.  Exceeding Authority or Imperfectly Executing Authority

19 - FINDINGS & RECOMMENDATION

Cox contends that the arbitrators exceeded their powers or imperfectly executed them by failing to give any explanation of their award against him, by failing to address statute of limitations issues raised in the hearing, and by failing to allow him to participate in the appointment of a replacement arbitrator.

Arbitrators can "exceed their powers" under subsection 10(a)(4) when they fail to meet their obligations, as specified in a given contract, to the parties. Western Employers Ins. Co. v. Jefferies & Co., Inc., 958 F.2d 258, 262 (9th Cir. 1992). Thus, to sustain an argument on an "exceeding their powers" basis, Cox needs to show that the panel exceeded its contractual authority, or failed to do something it was contracted to do. Cox makes no such showing here.

Subsection 10(a)(4) also provides for the setting aside of an award if the arbitrators "so imperfectly executed [their powers] that a mutual, final, and definite award upon the subject matter submitted was not made." As explained in a 1987 case by the District of Connecticut,

> [t]he general rule is that in order for an award to be final and definite, it must resolve all issues submitted to arbitration and determine each issue fully so that no further litigation is necessary to finalize the obligations of the parties under the award. . . . An award must also be clear enough to indicate what each party is required to do.

Dighello v. Busconi, 673 F. Supp. 85, 90 (D. Conn. 1987).

Section 10 does not authorize the setting aside of an arbitration award on the basis of a failure by the arbitrators to explain their decision. More than one court has held that an arbitration award will not be set aside simply because the arbitrators failed to provide an explanation of reasons. E.g.,

20 - FINDINGS & RECOMMENDATION

A.G. Edwards & Sons, Inc. v. McCollough, 967 F.2d 1401, 1403 (9th Cir. 1992) (arbitrators are not required to state the reasons for their decisions); Raytheon Co. v. Automated Bus. Sys., Inc., 882 F.2d 6, 8 (1st Cir. 1989) (arbitration award may not be set aside simply because arbitrators chose not to provide the parties with the reasons for their decision); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Burke, 741 F. Supp. 191, 194 (N.D. Cal. 1990) (arbitrator's award may be made without explanation of the reasons; absence of express reasoning by arbitrators does not support conclusion that they disregarded the law). Thus, here, the award may not be set aside because the panel failed to explain its decision or address a statute of limitations argument, which, by implication, the panel rejected.

As to Cox's participation in the choice of a substitute arbitrator, the record shows that on February 8, 2005, the NASD communicated to counsel for Barinaga, Cox, and UBS PaineWebber, that one of the arbitrators originally assigned to the case, Gordon MacMillan, had withdrawn from the panel and that pursuant to a stipulation by Barinaga and UBS PaineWebber, the replacement arbitrator was Gerald D. Wygant. Exh. 10 to Buckley Sept. 15, 2006 Declr.

Presumably, because the date of the notice was shortly after the panel learned that Cox had settled the pending claims against him, only Barinaga and UBS PaineWebber stipulated to Wygant. The NASD had not yet learned that in fact, there was no settlement by Cox.

Cox was still represented by Lagesen at the time and there is no record of any objection by Lagesen, or Cox, to Wygant's

21 - FINDINGS & RECOMMENDATION

appointment, either while Lagesen was representing Cox, or anytime thereafter. I recommend concluding that Cox presents no basis for setting aside the award on the ground that the panel exceeded its authority or imperfectly executed its authority by using an arbitrator appointed by stipulation when Cox appeared to be out the case, and to whom Cox offered no objection when it was apparent that he was still in the case.

C. Corruption, Fraud, Undue Means

Subsection 10(a)(1) allows the court to set aside an award "[w]here the award was procured by corruption, fraud, or undue means." Subsection 10(a)(2) allows the court to set aside an award "[w]here there was . . . corruption in the arbitrators, or either of them."

Cox argues that the arbitration award was procured by corruption, fraud, and undue means arising from the conduct of Barinaga and his attorneys.

The statutory language of subsection 10(a)(1) requires a showing that the alleged undue means, fraud, or corruption caused the award to be given. A.G. Edwards, 967 F.2d at 1403. I found no cases defining "corruption" as used in subsection 10(a)(1) or (2). However, the term must be read, at least as to its use in subsection 10(a)(1), in conjunction with fraud and undue means to require some proof of immoral, intentional misconduct. See PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship, 187 F.3d 988, 991 (8th Cir. 1999) (noting that undue means must be read in conjunction with the words fraud and corruption preceding it in the statute; further noting that courts have uniformly construed the term undue means as requiring proof of intentional misconduct); see

22 - FINDINGS & RECOMMENDATION

1  also The American Heritage Dictionary of the English Language 423

2  (3d ed. 1996) (defining "corrupt" as "[m]arked by immorality and

3  perversion; depraved").

4      The Ninth Circuit has established a three-part test for

5  vacating an arbitration award because of fraud. A.G. Edwards, 967

6  F.2d at 1404.  The party seeking vacation on that basis must show

7  the fraud was (1) not discoverable upon the exercise of due

8  diligence prior to the arbitration; (2) materially related to an

9  issue in the arbitration; and (3) established by clear and

10 convincing evidence.  Id.

11     Furthermore, as to undue means, the Ninth Circuit stated that

12 although the term had not been previously defined in any federal

13 case of which it had knowledge, it "clearly connotes behavior that

14 is immoral if not illegal." Id. at 1403.

15     In support of his corruption, fraud, and undue means

16 arguments, Cox first contends that the award should be set aside

17 because Buckley failed to disclose that he had a relationship with

18 at least one of the arbitrators, with whom he had worked or served

19 on an arbitration panel.  But, the arbitrator with whom Buckley had

20 previously served was replaced in February 2005, before the

21 arbitration, and before any request by Cox to postpone the

22 arbitration.  Cox establishes no basis for a conclusion that the

23 award was somehow tainted by this relationship.

24     Next, Cox contends that Barinaga and Buckley made misleading

25 and prejudicial references to a state court case involving issues

26 similar to those presented in the arbitration but to which Cox was

27 not a party.

28     The record shows that the panel had previously denied a

23 - FINDINGS & RECOMMENDATION

request by Barinaga to include references to Multnomah County Circuit Court Judge Douglas Beckman's comments about the conduct of Cox and Paulson in a Third Amended Statement of Claim.  Exh. 5 to Motion to Vacate.   The case before Judge Beckman apparently concerned the E.Com claims which were later settled with Cox while pending in the arbitration process.  Cox states that despite the panel's earlier ruling and the fact that the E.Com claims against him were settled, Buckley persisted in raising the E.Com case during the arbitration proceeding and in response to Cox's June 14, 2005 motion to postpone.

Cox contends that this alleged misuse of references to E.Com by Buckley exhibits fraud and corruption by Barinaga and Buckley, and partiality by the arbitrators who allowed the references.  He also suggests that the alleged fraud and corruption is further exposed because the assertions by Buckley about the E.Com case made to the arbitrators were allegedly false, constituting a fraud on the arbitration proceeding.

There are several problems with Cox's argument.  First, the record does not reveal that the alleged fraud, corruption, and undue means caused the award to be given.

Second, to the extent any references to the E.Com case were argument, as opposed to assertions of fact, such references could not be considered corrupt, fraudulent, or use of undue means.  It is not immoral or illegal to make a zealous argument on behalf of one's client.  See A.G. Edwards, 967 F.2d at 1403-04 (rejecting an argument that the assertion of a meritless defense could constitute either fraud or undue means and noting that sloppy or overzealous lawyering did not constitute undue means).

24 - FINDINGS & RECOMMENDATION

1    Third, there is no evidence suggesting that Buckley presented

2   any perjured testimony.  While he may have referred to facts or

3   made arguments about the E.Com case, it does not appear that any

4   perjured testimony was obtained as a result.  Other than making

5   general arguments that Buckley referred to the E.Com case during

6   the hearing, Cox does not identify any specific statements that

7   were allegedly false or prejudicial.  Furthermore, he makes no

8   effort to explain how these references affected the result.

9    Finally,  Cox argues that the award should be set aside under

10   subsection 10(a)(2) because of the bias of the arbitrators

11   demonstrated by their grant of summary judgment to UBS PaineWebber,

12   "represented by an expensive Portland law firm, and their denial of

13   summary judgment to me, a pro se respondent whose lawyers resigned

14   after I refused to join in an unjustifiable settlement that was

15   negotiated without my participation." Cox Sept. 1, 2006 Mem. at p.

16   15.  I recommend that this argument be rejected because "evident

17   partiality" or corruption cannot be shown simply by the fact that

18   the arbitrators ruled in favor of USB PaineWebber and against Cox.

19    D.  Other Misbehavior

20    Under subsection 10(a)(3), an award may be set aside because

21   of ". . . any other misbehavior by which the rights of any party

22   have been precluded."  Cox argues that the arbitrators engaged in

23   "other misbehavior" under this subsection when they failed to

24   explain the award against him and failed to allow him to

25   participate in the appointment of a replacement arbitrator.  Having

26   previously recommended that these arguments be rejected, I find no

27   reason for further addressing them here.

28    E.  Irrational Award and Disregard of the Law

25 - FINDINGS & RECOMMENDATION

None of the subsections of section 10 expressly address the setting aside of an award which is in manifest disregard of the law. Nonetheless, courts have recognized the right of a party to an arbitration to have an award set aside if it is in manifest disregard of the law. E.g., First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995) (noting limited circumstances in which arbitration award can be set aside, including those in 9 U.S.C. § 10, and stating that parties are bound by decisions not in manifest disregard of the law); Todd Shipyards Corp. v. Cunard Line, Ltd., 943 F.2d 1056, 1060 (9th Cir. 1991) (arbitrator's decision must be upheld unless it is completely irrational or constitutes a manifest disregard of the law).

An arbitration award will not be set aside for error in law or fact. Id. Confirmation of an award is required even in the face of misinterpretations of the law. Id. It is not enough that the panel may have failed to understand or apply the law. Id. The decision must be upheld unless it is completely irrational or constitutes a manifest disregard of the law. Id.

Although Cox contends that the award against him was made in manifest disregard of the law and is completely irrational, he makes no new arguments in support of this contention. He simply contends that for the reasons previously set forth, the award must be set aside as being irrational and in disregard of the law.

I recommend that this argument be rejected because it is wholly without support.

CONCLUSION

I recommend that Cox's motion to vacate the arbitration award (#3), be denied, and that this case be dismissed.

26 - FINDINGS & RECOMMENDATION

SCHEDULING ORDER

The above Findings and Recommendation will be referred to a United States District Judge for review.  Objections, if any, are due November 22, 2006.  If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due December 6, 2006, and the review of the Findings and Recommendation will go under advisement on that date.

IT IS SO ORDERED.

Dated this  7th   day of  November     , 2006.




 /s/ Dennis James Hubel
Dennis James Hubel
United States Magistrate Judge

27 - FINDINGS & RECOMMENDATION